IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CECILE L. ZAYCER, | * | |
| PLAINTIFF, | * | |
| V. | * | CIVIL ACTION NO.: RDB-11-3693 |
| STURM FOODS, INC., ET AL. | * | |
| DEFENDANTS. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This putative class action lawsuit arises out of a complaint filed by Cecile L. Zaycer ("Plaintiff" or "Zaycer") on behalf of herself and other persons similarly situated who purchased a Weis brand single-serve coffee product in Maryland, New Jersey, New York, Pennsylvania, and/or West Virginia.  Plaintiff has sued Defendants Sturm Foods, Inc. ("Sturm"), TreeHouse Foods, Inc. ("TreeHouse"), and Weis Foods, Inc. ("Weis") (collectively "Defendants"), for (1) violations of the consumer protection laws of Maryland, Pennsylvania, and West Virginia (Counts I, II, VI); (2) violations of New York's Deceptive Acts and Practices Law and False Advertising Law (Count III, IV); and (3) violations of New Jersey's Fraud in Sales or Advertising of Merchandise Law (Count V).

Pending before this Court is Defendants' Joint Motion to Dismiss (ECF No. 13). Defendants Sturm and Weis move this Court to dismiss Counts II through VI of the Plaintiff's Amended Complaint for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Defendant TreeHouse moves for dismissal on the ground that this Court lacks personal jurisdiction under Rule 12(b)(2).  This Court has reviewed the entire

record and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendants' Motion to Dismiss (ECF No. 13) will be GRANTED.

## BACKGROUND

Plaintiff Cecile L. Zaycer is a citizen of Maryland and purports to represent a class of plaintiffs in Maryland, New Jersey, New York, Pennsylvania, and West Virginia. Pl.'s Am. Compl. ¶ 1, ECF No. 5. Plaintiff seeks damages for herself and others similarly situated who were injured by the Defendants' alleged violations of numerous state consumer protection laws. *Id.* ¶ 24. Essentially, Plaintiff alleges that Defendants engaged in unfair or deceptive acts in selling, packaging, and marketing of single-serve coffee cartridges known as "K-Cups" (the "Product"), for use in Keurig brand coffee machines.

The Plaintiff alleges that the Product is intentionally designed and packaged to deceive and mislead to the consumer by way of its stated ingredients and purpose as an "alternative to other 'K-Cup' brands of ground coffee." *Id.* ¶¶ 15, 19. Specifically, the Plaintiff alleges that the terms "Soluble & Microground" on the packaging are used as a replacement for "Instant" and thus intentionally misleading and intended to defraud and mislead consumers. *Id.* ¶ 20. Additionally, the Plaintiff alleges that the product container, shelf display, and store location are intentionally selected to confuse and mislead consumers into buying a product that will provide the same "freshly brewed cup of coffee" provided by a Keurig K-Cup. *Id.* Defendants are Sturm Foods, Inc., TreeHouse Foods, Inc., and Weis Foods, Inc.[1] Sturm, a corporate citizen of Wisconsin, is the manufacturer and distributor of the Product at issue. *Id.* ¶ 2. TreeHouse, a corporate citizen of Illinois, is the parent

---

[1] This case is brought pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship.

company of Sturm. *Id.* ¶ 3. Weis, a corporate citizen of Pennsylvania, operates retail grocery stores in Maryland, New Jersey, New York, Pennsylvania, and West Virginia where it sells the Product. *Id.* ¶ 4.

On or about December 19, 2011, Zaycer purchased the Product from a Weis grocery store in Laurel, Maryland. *Id.* ¶ 7. According to the Plaintiff, the Product at issue contains "instant coffee" rather than actual coffee grounds. *Id.* ¶ 17. The user of the Product finds that the hot water from the Keurig brewer is merely added to the instant coffee in the single-serve cup, producing a hot cup of "instant coffee" instead of "freshly brewed coffee." *Id.* ¶¶ 17-18. Left behind, after this process, is an empty plastic cup. *Id.* ¶ 18.

The Plaintiff seeks to certify a class comprised of every person who purchased the Product in a Weis store because each potential class member was "similarly deceived, misled, and damaged by the packaging and false or misleading statements contained thereupon." *Id.* ¶ 24. The potential Plaintiff Class contains sub-classes, each sub-class comprised of purchasers from the individual states where Weis sells the Product, specifically, Maryland, New Jersey, New York, Pennsylvania, and West Virginia. *Id.* ¶ 25. The Plaintiff asserts that the multiple states have similar consumer protection laws and the facts are the same among the potential class members. *Id.* ¶ 26. Additionally, the Plaintiff asserts that these facts predominate over any questions affecting only individual members, making the class actions superior to other available methods for adjudicating the controversy. *Id.* ¶ 27. At this time, Zaycer is the only named plaintiff, and all of the events that caused her injury occurred from a single purchase of the Product in a Weis store in Maryland. *Id.* ¶ 7.

In their Motion to Dismiss, Defendants argue that the Plaintiff lacks standing to sue under the separate consumer protection laws of New Jersey, New York, Pennsylvania, or West Virginia (Counts II – VI).  Def.'s Mot. to Dismiss, ECF No. 13.  Accordingly, the Defendants do not challenge the Plaintiff's Article III standing concerning the alleged violations of the Maryland Consumer Protection Act (Count I).  Additionally, Defendant TreeHouse moves to dismiss on the ground that TreeHouse has no contacts in Maryland and as a result, this Court lacks personal jurisdiction over the company.  *Id.*

In her Opposition to Defendants' Motion to Dismiss, Plaintiff does not contest Defendant TreeHouse's Motion to Dismiss for lack of personal jurisdiction.  Pl.'s Opp. at 1, n. 1, ECF No. 21.  However, Plaintiff does contest the Motion to Dismiss for lack of standing as to Defendants Sturm and Weis.  *Id.* at 1.  Plaintiff's opposition to the Motion to Dismiss for lack of standing is premised on an interpretation of two Supreme Court cases that the Plaintiff claims direct the court to consider the issue of class certification prior to the issue of Article III standing.  *Id.* at 5-8.  Drawing on *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), Zaycer argues that class certification is "logically antecedent" to the Article III standing inquiry, and as a result, this Court should delay considering standing until the class has been certified and it can consider the standing with reference to the class as a whole.  *Id.* at 8.

## STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)

challenges a court's authority to hear the matter brought by a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).   A plaintiff carries the burden of establishing subject matter jurisdiction.  *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999); *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 294 (D. Md. 2005).   The court may "consider evidence outside the pleadings" in a 12(b)(1) motion to determine if it has jurisdiction over the case.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).   "The court should grant the 12(b)(1) motion only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Biktasheva*, 366 F.Supp.2d at 294 (quoting *Richmond*, 945 F.2d at 768).

Under Rule 12(b)(1), if a party lacks standing the court automatically lacks subject matter jurisdiction. *See Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009).  To meet the standing requirement, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 750 (1984); *see also Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009).

## ANALYSIS

The crux of this case concerns whether the Plaintiff has standing to represent potential class members who were harmed by the Product under the consumer protection laws of states where the Plaintiff is not a citizen.   The threshold question this Court must answer in ruling on this motion to dismiss is whether it should evaluate the named plaintiff's standing to bring the claims asserted under the individual state's consumer protection laws in Counts II through VI or whether it should wait until the class certification stage to make this

assessment.  This Court will first address the preliminary issues pertaining to the personal jurisdiction over Defendant TreeHouse and the Plaintiff's standing to bring Count I under the Maryland Consumer Protection Act.  In order to frame the issue at bar, the "logically antecedent" concept will then be examined.  This Court will evaluate the Plaintiff's argument that class certification should be considered "logically antecedent" to the Article III standing inquiry.  Finally, this Court will consider the threshold question and evaluate the timing of the Article III standing inquiry as it concerns the Plaintiff's ability to bring claims on behalf of unnamed plaintiffs.

## I.       Preliminary Matters

In the Defendants' Joint Motion to Dismiss, Defendant TreeHouse moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Def.'s Mot. to Dismiss at 2, ECF No. 13.  TreeHouse argues that it is a corporate citizen of Illinois and Delaware.  Def.'s Mem. in support of Mot. to Dismiss at 4, ECF No. 14.  Moreover, TreeHouse claims that the Plaintiff's allegations are untrue because TreeHouse itself has no operating business and therefore cannot and "does not manufacture, advertise, offer for sale or sell any products anywhere."  *Id.* at 5.  The Plaintiff does not contest the Motion to Dismiss and acknowledges that this Court lacks personal jurisdiction over TreeHouse.  Pl.'s Opp. at 1, n. 1, ECF No. 21.  Accordingly, the Defendants' Motion to Dismiss will be GRANTED as it pertains to TreeHouse.  Hereinafter, the term "Defendants" refers only to Strum and Weis as those Defendants acknowledge that this Court may exercise personal jurisdiction over them.

## II.      Framing the Issue

The Plaintiff argues that class certification is "logically antecedent" to the Article III standing inquiry and thus standing should not be addressed during the motion to dismiss stage.    In making this argument, the Plaintiff extrapolates from two Supreme Court decisions, *Amchem Prods., Inc. v. Windsor*, 521 U.S 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), in which the Supreme Court addressed standing when attempting to settle an asbestos tort liability case.   Both *Amchem* and *Ortiz* dealt with a proposed settlement that would have affected unnamed plaintiffs who had not yet suffered any asbestos-related injury.[2]   The Court deferred consideration of the standing of the unnamed plaintiffs until after class certification because the class certification issues were "'logically antecedent' to Article III concerns" and therefore could be "treated before Article III standing."   *Ortiz*, 527 U.S. at 831;   *see Amchem*, 521 U.S. at 612.    The Court recognized that Article III considerations generally must be dealt with before reaching the merits of a case, however, to rule on standing before class certification in *Ortiz* and *Amchem* would have "required the Court to make a determination as to the standing of persons who were not actually parties to the case, but who were only proposed parties to the case."   *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 153 (E.D. Pa. 2009).   The Supreme Court analyzed the dispositive class certification issues first while being "'mindful that [Rule 23's] requirements must be

---

[2] Both *Amchem* and *Ortiz* were cases involving a class certified under Rule 23(b)(1)(B) on a limited fund rationale which provided for payment of damages to class members.  A "limited fund" exists when "numerous persons make claims against a fund insufficient to satisfy all claims."  *Amchem*, 521 U.S. at 614.   Generally, courts will only certify a class under this subsection of Rule 23 if the defendant has severely limited assets or is almost insolvent.  *See Ortiz*, 527 U.S. at 864.

interpreted in keeping with Article III's constraints.'"  *Ortiz*, 527 U.S. at 831 (quoting *Amchem*, 521 U.S. at 612-13).

The Court of Appeals for the Fourth Circuit has not yet ruled on the "logically antecedent" concept.  This concept, as laid out in *Amchem* and *Ortiz*, has, as one observer noted, "caused a great deal of mischief."  Linda S. Mullenix, *Standing and Other Dispositive Motions After* Amchem *and* Ortiz: *The Problem of "Logically Antecedent" Inquiries,* 2004 Mich. St. L. Rev 703, 707 (Fall 2004).  A decision by United States District Court for the Northern District of Illinois provides a useful summary of this issue and its treatment by courts around the country:

> Some courts have taken an almost categorical approach, routinely resolving class certification questions prior to conducting a standing inquiry.  *See In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 653–57 (E.D. Mich. 2011) (providing a good overview of the state of the law).  Others have taken a "nuanced" approach, attempting to fashion a governing principle to determine when class certification is considered "logically antecedent." *See* Linda S. Mullenix, *Standing and Other Dispositive Motions After* Amchem *and* Ortiz: *The Problem of "Logically Antecedent" Inquiries,* 2004 Mich. St. L. Rev 703, 727 (Fall 2004) (describing *Payton v. Cnty. of Kane*, 308 F.3d 673 (7th Cir. 2002) and *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002)).  Finally, some courts limit *Ortiz* and *Amchem* to the "very specific situation of a mandatory global settlement class," and do not interpret those cases to require courts to consider class certification before standing. *See, e.g.*, *Easter v. American West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004).

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*, MDL 2109, 2012 WL 39766, at *4 (N.D. Ill. Jan. 9, 2012).  The categories described in *In re Plasma-Derivative* provide a framework within which this court can analyze the arguments put forward by the parties in this case.

Relying on the decision in *Ortiz*, the Plaintiff argues that "where the matter is a class action and there is a logical reason to delay the standing decision, the Rule 23 class certification stage of the litigation is the appropriate time to evaluate class standing."  Pl.'s

Opp. at 8, ECF No. 21.  In furthering her position, the Plaintiff generally relies on cases that fall into the second category described by the *In re Plasma-Derivative* court.  This category of decisions takes a nuanced approach, evaluating the facts of each case in order to determine if issues of class certification are "logically antecedent" to the Article III standing inquiry.

### III.    Class certification is not "logically antecedent" to standing

The Plaintiff cites *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) for the proposition that the court should define the class first and then assess whether the proposed class representatives can satisfy the necessary requirements of Rule 23.  In *Payton*, six arrestees filed a putative class action on behalf of themselves and all others similarly situated who had paid a fee to be released on bail from jails from various counties in Illinois.  The named plaintiffs sought to certify a class that would include anyone who paid a fee in nineteen counties even though the named plaintiffs had direct claims in only two counties. The district court dismissed all of the claims and denied the motion for class certification as moot.  The Court of Appeals for the Seventh Circuit found that the named plaintiffs did have standing to sue in two counties where they had direct claims.  The court then addressed the "thorniest issue in this case: the propriety of maintaining a suit against the other 17 counties, for which we have no specific named plaintiffs." *Payton*, 308 F.3d at 677-78.

The *Payton* court questioned whether, for standing purposes, it should "look only to the named plaintiffs, or if, once the requirements of Rule 23 are met, the true plaintiff is the class as a whole." *Id.* at 678.  In beginning its analysis of the timing of the standing inquiry, the *Payton* court noted the *Ortiz* "directive to consider issues of class certification prior to

issues of standing." *Id.* at 680.  To support the finding that the standing issues should be put off until after class certification, the court invoked the "juridicial link" doctrine.  *Id.* at 678.

The *Payton* court described the "juridicial link" doctrine as allowing a class action to go forward if the "plaintiffs as a group—named and unnamed—have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise 'juridicially related in a manner that suggests a single resolution of the dispute would expeditious.'" *Id.* at 679 (quoting *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973)).  The bail bond at issue was permitted by state statute so "it is reasonable for the putative plaintiff class to try to hold all counties accountable within one suit." *Id.* at 680.  Although being skeptical that use of the "juridicial link" doctrine would lead to sound analysis of the issue, the *Payton* court found a link sufficient to allow the named plaintiffs to bring suit on behalf of the unnamed plaintiffs because they shared the same legal claims through a state statute.  *Id.* at 681-82.  Despite this finding, the court emphasized that this would not be the case "where the named plaintiff is trying to piggy-back on the injuries of the unnamed class members" because "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs." *Id.* at 682 (internal citation omitted).

The Plaintiff's reliance on *Payton* is misplaced for several reasons.  First, the United States Court of Appeals for the Fourth Circuit does not recognize the "juridicial link" doctrine.  *See Faircloth v. Fin. Asset Sec. Corp. Mego Mortgage Homeowner Loan Trust*, 87 F. App'x 314, 318 (4th Cir. 2004) (noting that the Fourth Circuit has yet to recognize the "juridicial

link" doctrine).  Although not recognizing the doctrine, the Fourth Circuit has explained that

the doctrine requires that the defendants "be linked by way of some 'conspiracy or concerted

scheme' with a defendant against whom the representative does have a direct claim."  *Id.*

(citing *Payton*, 308 F.3d at 678-79); *see also Dash v. FirstPlus Home Loan Owner Trust 1996-2*, 248

F. Supp. 2d 489, 505 (M.D.N.C. 2003) (interpreting the *Payton* court's ruling on the

"juridicial link" doctrine to cases "that have either a contractual obligation among all

defendants, or a state or local statute which requires common action by defendants").

Moreover, the plaintiff's reliance on *Payton* ignores Seventh Circuit cases post-*Payton* that

limit the requirement in *Ortiz* to situations where "an appellate court simultaneously facing

both class certification and Article III standing issues must deal with Rule 23 issues first

when they are dispositive."  *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 923 (N.D. Ill.

2009) (citing to *Arreola v. Godinez*, 546 F.3d 788, 794-95 (7th Cir. 2008), which decided

individual standing before class certification).  Outside of the Seventh Circuit, courts have

also been hesitant to give *Amchem* and *Ortiz* a broad reading because those cases dealt with

the standing of absent class members, not the named plaintiffs, and also because neither case

even questioned the well-established standing doctrine cases previously issued by the

Supreme Court.[3] *See In re Wellbutrin*, 260 F.R.D. at 154.

   While Zaycer correctly relies on *Payton* for the *Ortiz* exception that "once a class is

properly certified, statutory and Article III standing requirements must be assessed with

reference to the individual named-plaintiffs," *Payton*, 308 F.3d at 680, however, Zaycer does

---

[3]  *See, e.g., Lewis v. Casey*, 518 U.S. 343 (1996) (requiring that a named plaintiff allege and show
personal injury even if that injury is shared by a large number of other people); *Warth v. Seldin*, 422
U.S. 490 (1975) (same); *O'Shea v. Littleton*, 414 U.S. 488 (1974) (permitting courts to adjudicate only
cases and controversies).  *See* infra Part IV for a more detailed discussion of these cases.

not share the characteristics of the *Payton* plaintiffs that made class certification issues logically antecedent to Article III standing.  Zaycer does not claim that there is a "conspiracy or concerted scheme" nor does she establish that she is suing under the same consumer protection laws, only that the questions of fact are common to all class members in the various states where the Product is sold.  Pl.'s Am. Compl. ¶ 27, ECF No. 5.  The Plaintiff's Complaint attempts to establish that the unnamed plaintiffs' all suffered the same harm as the named plaintiff, and that the legal claims are not different because the laws of the various states are similar to each other.  The factual similarities in no way relieve the Plaintiff from establishing her own individual standing because standing doctrine imposes a "general prohibition on a litigant's raising another person's legal rights" because of the "requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

While accepting the plaintiff's assertion that the *Ortiz* exception applies where the standing question depended on the certification of the class, this Court does not accept that, in this case, the *Ortiz* exception means that "class standing is best addressed at the Rule 23 class certification stage of litigation, and not on a preliminary motion to dismiss."  Pl.'s Opp. at 6.  The Plaintiff has not shown that issues of class certification are "logically antecedent" to the Article III standing inquiry.  After reviewing the multitude of cases cited by the parties in this case, this Court finds the weight of authority favors the Defendants' position, and the Court will therefore resolve the standing challenge before class certification.

## IV.     The Plaintiff does not have standing to bring Counts II-VI

The Constitution permits the federal courts to adjudicate only actual cases and controversies.  See U.S. CONST. art. III, § 2; *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974); *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009).  The standing inquiry, as an aspect of the cases and controversy requirement, involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Essentially, the constitutional standing inquiry determines whether a particular litigant "is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth*, 422 U.S. at 498.  In order to satisfy the constitutional standing requirements, three factors must be met:

> (1) [the party] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bishop*, 575 F.3d at 423 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Individual standing is not merely a pleading requirement, but an "indispensable part of the plaintiff's case" that "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof."  *Lujan*, 504 U.S. at 561; *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) ("The party attempting to invoke federal jurisdiction bears the burden of establishing standing.").

Prudential standing rules counsel the court to refuse to adjudicate some claims.  *See Allen*, 468 U.S. at 751.  The first self-imposed constraint guides the court to refuse standing

to an individual asserting a "'generalized grievance' shared by all or a large class of citizens" because "that harm alone normally does not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499.  The second constraint requires that the interests asserted by the plaintiff "fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Bennett v. Spear*, 520 U.S. 154, 162 (1997).  The third constraint demands that the court be very cautious when the "plaintiff's claims to relief rests on the legal rights of third parties." *Warth*, 422 U.S. at 500-01.

Even if the court chooses to allow an exception to prudential standing rules, a plaintiff must still allege an injury in fact in accordance with Article III's requirements.  *See id.* at 501; *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 39 (1976) (holding it necessary that a "plaintiff who seeks to invoke judicial power stand to profit in some personal interest").  The general rule against plaintiffs asserting the legal rights or interests of third parties stems from the concern that the party bringing the claim has "the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." *Kowalski*, 543 U.S. at 129.  The rule against representing third parties is not absolute, but the exceptions are limited in two ways.  First, the party asserting the right must have a "close" relationship with the third party, and second, the third party must be hindered in bringing suit to vindicate its own rights.  *See id.* at 129-30.

In the context of a putative class action, the inquiry into the named plaintiff's standing is no different than in an ordinary case.  *See In re Wellbutrin*, 260 F.R.D. at 152.  The named plaintiff "must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants." *Warth*, 422 U.S. at 501.  "That a suit may

be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotations omitted).

After inspecting the Plaintiff's complaint this Court concludes that the Plaintiff does not have standing to bring the causes of action alleged in Counts II-VI.  As discussed *supra*, the Plaintiff's standing is not "logically antecedent" to class certification and her standing must be analyzed separately.  *See Warth*, 422 U.S. at 501; *In re Checking Account Overdraft Antitrust Litig.*, 694 F. Supp. 2d 1302, 1324-25 ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to the claim."). Zaycer was neither harmed by the Product, nor purchased the Product, in any state other than Maryland.  Zaycer suffered no injury-in-fact, and is not in imminent danger of being injured by the Product in any of the states except Maryland.  Because the injury to the named plaintiff occurred in Maryland, she has no standing to sue under any state consumer protection law except for Maryland's.[4]

---

[4] None of the consumer protection laws in Counts II-VI allow an out-of-state plaintiff to sue.  *See Lewis v. Ford Motor Co.*, 263 F.R.D. 252, 258-59 (W.D. Pa. 2009) (dismissing a potential class action pursuant to Pennsylvania's Consumer Protection Act because the plaintiff did not provide evidence that each potential class member was a Pennsylvania citizen); *Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681, 686 (S.D.N.Y. 2010) aff'd, 2012 WL 1109397 (2d Cir. Apr. 4, 2012) (holding that "a nationwide class suing under [New York's Deceptive Acts and Practices Law] GBL § 349 would have to be limited to those who engaged in a transaction that deceived them in New York."); *Mountz v. Global Vision Products, Inc.*, 3 Misc. 3d 171, 177 (N.Y. Sup. Ct. 2003) (holding that in order to sue under New York's False Advertising law "some part of the underlying transaction must occur in New York State"); *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 280 (D.N.J. 2011) (prohibiting a plaintiff from representing a class pursuant to New Jersey's Fraud in Sales or Advertising of Merchandise Law because the plaintiff did "not have standing to pursue a claim that

**CONCLUSION**

For the foregoing reasons the Defendants' Joint Motion to Dismiss Counts II-VI of Plaintiff's Amended Complaint for Lack of Standing and TreeHouse's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 13) is GRANTED.


A separate Order follows.


Dated:       September 12, 2012


                                                      /s/_____
                                                      Richard D. Bennett
                                                      United States District Judge

---

products [ ]he neither purchased nor used did not work as advertised") (internal citation omitted); *Silvious v. Coca Cola Co.*, 2012 WL 1565288, at *4 (N.D. W.Va. May 2, 2012) (holding that in order to obtain standing, a plaintiff must show an injury-in-fact under the West Virginia Consumer Protection Act and "must have suffered damage as a result of the use or employment of an unlawful trade practice") (internal citations omitted).